**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

CYNTHIA ROSKENS,

           Plaintiff,

vs.

ERIK GRAHAM, Individually and in his
official capacity as Mayor of the City of
Ackley, Iowa, et al.,

           Defendants.

No.  C18-71-LTS

**MEMORANDUM OPINION
AND ORDER ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT**

---

***TABLE OF CONTENTS***

I.     **INTRODUCTION**................................................................2

II.    **RELEVANT FACTS** ........................................................2
    A.    *Defendants' Motion* .................................................. 2
    B.    *Plaintiff's Statement of Additional Facts and Facts in
           Support of Plaintiff's Motion for Partial Summary
           Judgment*........................................................... 6
    C.    *Roskens' Claims* ................................................. 13

III.   **ANALYSIS** ........................................................... 15
    A.    *Summary Judgment Standards*................................. 15
    B.    *The Parties' Arguments* ......................................... 17
    C.    *Defendants' Motion* .............................................. 19
         1.    *Fourth Amendment Violation and Invasion of
                Privacy Claims - (Counts I-IV, VI-VII, IX, XII-
                XVIII, XVI)* ............................................. 19
             a.    *Parties' Arguments* ............................. 19
             b.    *Did a Private Party Open the Letter?* ........................ 21
             c.    *Did Roskens Maintain a Privacy Interest in
                 the Letter?*........................................... 22
             d.    *Discretionary Act Immunity*................................. 27
             e.    *Summary*........................................... 31
         2.    *Malicious Prosecution Claims – (Counts V and XIX)*............. 32

   *3. False Arrest Claim – (Count XX)* ...................................... *39*
   *4. Abuse of Process Claims – (Counts X and XXI)* ................... *40*
   *5. Defamation Claim – (Count XXIV)* .................................. *44*
   *6. Monell Claims – (Counts VII, VIII, IX and XI)* ................... *47*
   *7. Negligent Training and Supervision of DeBerg and*
    *Shimon – (Counts XXII and XXIII)* ................................. *48*
   *8. Respondeat Superior Liability – (Counts XXV and*
    *XXVI)* ...................................................................... *51*
 *D. Roskens' Motion* ................................................................ *53*
*IV. CONCLUSION* ............................................................................ *54*

## I. INTRODUCTION

   This case is before me on a motion (Doc. No. 13) for summary judgment by defendants and a motion (Doc. No. 15) for partial summary judgment by plaintiff Cynthia Roskens.  Each side has filed a resistance (Doc. Nos. 22-1, 23[1] and 25) and Roskens has filed a reply (Doc. No. 26).  I find that oral argument is not necessary.  *See* Local Rule 7(c).

## II. RELEVANT FACTS

### A. Defendants' Motion

   The following facts are undisputed[2] for purposes of defendants' motion except

---

[1] Roskens did not separately file her brief in resistance to defendants' motion, as directed in my order (Doc. No. 24) granting her unresisted motion to file an overlength brief.  Therefore, I will consider the brief (Doc. No. 22-1) filed in conjunction with the motion (Doc. No. 22) to file an overlength brief as her resistance.

[2] Roskens argues that defendants' statement of undisputed material facts (Doc. No. 13-1) fails to comply with Local Rule 56(a) in that several of the numbered paragraphs contain multiple statements of fact.  *See* Local Rule 56(a)(4) ("Each individual statement of material fact must be concise [and] numbered separately . . . .").  Roskens also argues that defendants have not adequately supported each individual statement of fact with "references to those specific pages, paragraphs, or parts of the pleadings, depositions, answers to interrogatories, admissions,

where otherwise noted:

Roskens was hired by the City of Ackley in 2004 as a Billing Clerk and became the City Clerk in 2007. Doc. No. 23-1 at 4. She stayed in this position until she resigned on July 15, 2016, to take another job. *Id.*

On March 6, 2017, a U.S. Cellular phone bill was delivered to the Ackley City Hall and opened by City Clerk Kelly DeBerg. The phone bill was addressed as follows:



*Id.* at 4 (citing Doc. No. 19 at 33). The address is not the address of Ackley City Hall or any other City of Ackley office. The bill showed phone number 641-373-4856 listed as "City of Ackley" and the phone number 319-240-0644 listed as "Cynthia Roskens."[3]

---

exhibits, and affidavits that support the statement, with citation to the appendix." *Id.* Further, Roskens asserts that defendants' appendix does not comply with Local Rule 56(e) because it does not contain proper authentication for its citations to depositions. She claims she has been prejudiced in attempting to respond to the statement of facts and requests that I strike defendants' statement of facts. Doc. No. 23-1 at 3-4. To the extent there are disputed statements of fact that could turn on the issue of whether they are properly supported by the record, I will address them accordingly. Additionally, defendants did not respond to plaintiff's statement of additional material facts offered in resistance to defendants' motion for summary judgment. *See* Doc. No. 23-2. As such, I may consider those facts undisputed for purposes of defendants' motion. *See* Fed. R. Civ. P. 56(e). As these first two footnotes suggest, and as will be noted throughout this ruling, both sides have managed to make it difficult for the court to address the issues in an efficient manner.

[3] The 319-240-0644 number is not Roskens' number, but the personal number of her friend,

Both phone numbers were under the tax ID number for the City of Ackley. *Id.* at 5. From July 2016 through December 2016, Roskens received the bill at her home address (701 7th Avenue, Ackley, IA 50601) with the "City of Ackley" name on the envelope. *Id.* She never contacted U.S. Cellular to change the name from "City of Ackley" to her own. *Id.* She denies ever noticing the "City of Ackley" name on the envelope. *Id.* No one from the City of Ackley authorized Roskens to use the "City of Ackley" name as an account name for her phone number and no one authorized her to use the City of Ackley's tax ID number for the cell phone account. *Id.*

DeBerg checked the account number on the bill against other city accounts. *Id.* at 6. DeBerg determined that the City had never paid on the account listed in the bill and contacted Mayor Erik Graham, who instructed her to call U.S. Cellular. *Id.* Police Chief Brian Shimon was in DeBerg's office at the time she called the Mayor. *Id.* U.S. Cellular confirmed that the account was addressed to the City of Ackley at 701 7th Avenue, Ackley, IA 50601-1509, and established using the City of Ackley tax ID but advised DeBerg that it could not provide further information because Roskens was the only one authorized on the account. *Id.* at 7.

Shimon conducted an investigation into the bill. Roskens disputes this characterization as it fails to identify any factual act performed by Shimon. *Id.* at 6. Shimon filed a criminal complaint against Roskens. *Id.* at 7. Roskens disputes that Shimon did this upon advisement from the Iowa Attorney General that the County Attorney could file criminal charges. *Id.* Roskens disputes whether Shimon had malice toward her when he filed the complaint and whether she plea bargained the case and paid

---

Dennis Durnin. Roskens used the 641-373-4856 number listed under the City of Ackley. *Id.* at 4-5. Roskens never notified anyone from the City of Ackley that she was allowing Durnin to use her phone account with the City's tax ID number to get tax exempt status for his phone. *Id.* Roskens denies that the numbers in the phone bill and whom they belong to constitute material facts. *See* Doc. No. 23-1 at 4-5.

the amount Shimon came up with as unpaid taxes in the form of restitution. *Id.*

A second issue arose between Roskens and the City of Ackley involving an alleged overpayment of vacation time. Roskens initially intended to resign on July 8, 2016, but she stayed on an additional week at the request of Graham so that the City Clerk's office would remain staffed. *Id.* at 8. The City of Ackley employee handbook provided:

> You may not receive pay in lieu of vacation while employed. If your employment is terminated for any reason, you will be paid for unused vacation to which you are entitled.
>
> Vacations may not be accumulated. In case of an emergency, vacations scheduled for June and not able to be taken can be rolled over to July. Any vacation time remaining at the end of the fiscal year will be lost.

*Id.* Roskens denies that only the City Council had authority to change the policy on vacation payout. *Id.* She also denies that the appropriate way to bring a request for vacation payout to the attention of the City Council as an exception to the rules set forth above was to place it on an agenda as a line item. *Id.* She denies that as City Clerk, she had the authority to place items on the agenda, including any line item regarding her request for vacation payout. *Id.* Roskens also denies that she told Graham that she would like to be compensated for unused vacation time and that he referred her to Joe Wessels and Robert Harms, as members of the Council Finance Committee, regarding putting the item on an agenda. *Id.* She denies that she approached Harms about her request and he told her that he did not oppose it, but that he also did not have the power to grant it and that such a request had to be submitted to the entire council. *Id.*

Roskens' paycheck was placed on the agenda as a line item, but there was no information regarding the vacation payout included in the line item. Subsequently, a state audit determined that Roskens was overpaid 102 hours, including 80 hours of unused vacation time paid in June 2016 and 22 hours of improperly carried over vacation time paid in July 2016. *Id.* At the direction of Graham, City Attorney Michael A. Smith

demanded repayment from Roskens. *Id.* When Roskens refused, Smith filed a small claims action against Roskens for the amount of the overpayment. After a hearing, the court found for Roskens and dismissed the City's suit. At her deposition, Roskens claimed the civil lawsuit against her was defamatory. Roskens admits she did not suffer any monetary damage because of the alleged defamation. *Id.*

**B.    *Plaintiff's Statement of Additional Facts and Facts in Support of Plaintiff's Motion for Partial Summary Judgment***

Except as otherwise noted, the following facts[4] are undisputed for purposes of defendants' motion for summary judgment based on (1) Roskens' statement of additional material facts (Doc. No. 23-2), to which defendants did not respond, and (2) Roskens' motion for partial summary judgment:

While working for the City of Ackley, Roskens also served as the cemetery sentinel. Defendants dispute that this job required Roskens to be on call 24 hours a day, seven days a week noting that Roskens acknowledged at her deposition that she was given 24 hours' notice to make sure a grave was marked and opened. Doc. No. 25 at 2. It is also disputed to what extent Roskens was given the duties of the former City Administrator. Defendants note that the City Council abolished the position when the previous City Administrator left employment and admit that Roskens assumed some of those duties. *Id.* Unlike the prior City Administrator, defendants note Roskens did not have authority to approve her own vacation schedule or to approve a vacation payout. *Id.* Finally, Roskens also performed some duties of the Economic Director from

---

[4] I have left out duplicate facts from defendants' statement of facts. Defendants also disputed some of the facts contained in Roskens' statement of additional facts (Doc. No. 23-2) because they were also contained in the statement of facts (Doc. No. 15-1) in support of her motion for partial summary judgment. Any facts that are disputed for purposes of Roskens' motion are noted herein. Any facts defendants failed to respond to in Roskens' statement of additional facts (Doc. No. 23-2) are considered undisputed.

February 2014 through June 2015 while the position was vacant.  *Id.*

The City of Ackley did not provide Roskens with a cell phone for use in her public duties.  *Id.*  Roskens contends she utilized her personal cell phone in her public duties. Defendants dispute this, noting that Roskens has submitted no evidence of this beyond her testimony.  *Id.*  Roskens claims that in 2014, U.S. Cellular "placed her in its program for a sales tax exemption because she was a city employee."[5]  Doc. No. 15-1 at 2. Defendants dispute this.  Doc. No. 25 at 3.  Roskens personally paid for all lines on the account she set up.[6]  *Id.*  Roskens contends she contacted U.S. Cellular at its Cedar Falls office on July 3, 2016, to advise she was no longer a city employee and to change the address to which her cell phone bill was sent.  Doc. No. 15-1 at 2.  Defendants dispute this, noting that records show her account continued using the tax ID number for the City of Ackley.  Doc. No. 25 at 3.  Defendants agree, however, that from July 2016 through December 2016, Roskens received monthly U.S. Cellular bills addressed to "City of Ackley" at her home address, which contained the "City of Ackley" name on the envelope.  She did not contact U.S. Cellular to correct the name.

Multiple facts concerning DeBerg's opening of the letter are disputed, such as when DeBerg realized the billing statement belonged to Roskens and whether DeBerg attempted to confirm whether the account number was a city account.  *Id.*  DeBerg admits that she saw the address on the outside of the envelope, but it is disputed that she knew the address was Roskens' home address when she opened it.  Doc. No. 25 at 4.  While DeBerg could have determined whose address it was prior to opening the billing statement, she did not confirm the mailing address was Roskens' until after examining

---

[5] However, Roskens denies that the account for the numbers was established in 2014, after she became City Clerk.  Doc. No. 23-1 at 4.

[6] Defendants note that Roskens has admitted she was reimbursed for use of one of the phone lines from the individual using it.  Doc. No. 25 at 3.

the bill. Defendants also dispute the delivery was inadvertent given that the addressee was "City of Ackley." *Id.* at 3. Roskens' name appears beginning on Page 5 of the bill. *Id.* It is undisputed that DeBerg's actions were taken in her capacity as an officer of the City of Ackley. Doc. No. 25 at 6. She provided the billing statement to Chief Shimon after contacting U.S. Cellular. *Id.* Roskens notes the City never provided DeBerg training on how to handle mail inadvertently or mistakenly delivered to or received by the City of Ackley and does not have a policy governing how improperly delivered mail is to be handled. Doc. No. 23-2 at 18-19.

Shimon knew the address on the front of the envelope was not an address for the City of Ackley. *Id.* While it is admitted that Shimon saw Roskens' name on the bill, it is disputed whether he concluded the bill was for Roskens given that the bill was addressed to the City of Ackley. *Id.* Chief Shimon understood a search warrant was required to review a person's private mail. As part of his investigation into the U.S. Cellular bill, Shimon called Roskens and left her a voicemail message asking her to call him. *Id.* He had been advised by the Iowa Attorney General's office that a city's tax ID was to be used for official city business. It is disputed whether this voicemail was the first moment Roskens realized the sales tax exemption (using the City's tax ID number) was still being applied to her phone bill.[7] *Id.* at 7. Roskens advised Shimon by text that she got his message and was contacting U.S. Cellular.[8] *Id.* Shimon then contacted the City's former mayor and also spoke with the City's water billing clerk about Roskens' phone bill. *Id.*

It is disputed what Shimon knew and believed about the bill at this time. Roskens

---

[7] Defendants allege, but Roskens denies, that she knew the account was not being charged sales tax and was receiving tax exempt benefits through the use of the City's tax ID number. Doc. No. 23-1 at 5.

[8] Defendants allege, but Roskens denies, that she told Shimon that the second number on the bill was her daughter's when, in fact, it was used by Durnin. *Id.*

alleges he knew Roskens had not purchased a cell phone plan under the City's credentials, that Roskens was and had always been the sole owner of the account in question and that the City had never made any payments towards it.  Doc. No. 15-1 at 6.  Defendants state that Shimon assumed the bill was for a city account because it was addressed to the City of Ackley, one of the phone numbers on the account was for the City of Ackley, that the account had been established using the City of Ackley's tax ID number and that a city tax ID number could be used only for official city business.  Doc. No. 25 at 7.

Shimon filed a criminal complaint against Roskens on March 6, 2017, charging her with Fraudulent Practices in the Second Degree in violation of Iowa Code § 714.10(1)(A) – a class D felony.  Doc. No. 25 at 7.  It is disputed what led Shimon to file the charge.  Defendants contend it is because he had probable cause given what he knew about the U.S. Cellular bill, verifying with the former mayor that he had not approved a cell phone for Roskens nor authorized an account with two phones using the City's tax ID number and learning from the Iowa Attorney General that a city tax ID could be used only for city business.  *Id.* at 7-8.  Roskens contends he decided to file charges because she had only texted him and not called him back as quickly as he wanted.  Doc. No. 15-1 at 7.

The parties dispute whether opening the U.S. Cellular bill violated Roskens' Fourth Amendment rights and therefore, what information was required to be included in the complaint and affidavit.  Roskens contends the complaint did not disclose the absence of a warrant, consent or legal justification at the time the bill was opened, that DeBerg and Shimon knew it concerned Roskens' cell phone account and that they knew the City had never paid any money towards the account.  *Id.*  Defendants contend they had no reason to believe the bill was anything other than a City of Ackley bill and there was no search warrant required to open the bill.  They also state that neither DeBerg nor Shimon believed that the bill (addressed to the City of Ackley) was Roskens' private correspondence.  Defendants admit that the criminal complaint did not disclose that it had

been determined that the City of Ackley had never paid any money on that account (although they dispute that such information is relevant to the charge against Roskens). *See* Doc. No. 25 at 8.

Shimon based the filed charge on his own calculation of what Roskens had received from the sales tax exemption going back to 2013. He calculated this amount to be $1,692.08. *Id.* Roskens contends Shimon "intentionally or recklessly" did not account for Roskens having used her personal cell phone to conduct "substantial amounts of City business" during her time as City Clerk. Doc. No. 15-1 at 8. She also contends he knew she used her personal phone to conduct official business while a city employee and had not sought reimbursement and he did not take into account that she had been entitled to receive the credit up to her date of resignation. *Id.* Defendants dispute these matters are material because the City did not approve a cell phone for Roskens or authorize the U.S. Cellular account with the two phone numbers. Doc. No. 25 at 8. Moreover, Roskens has not submitted evidence of specific instances when she used her personal cell phone for City of Ackley business. *Id.*

The parties dispute whether Shimon conducted a full and complete investigation and how he reached the amount of $1,692.08 that he determined Roskens owed. Roskens argues Shimon arbitrarily based this amount on the total amount of a credit Roskens had received on the bill rather than on any known amount of sales tax. She also argues that he made no attempt to determine the actual amount of time for which Roskens had been receiving the tax exemption and based his calculation on how long another police officer remembered Roskens possessing a cell phone. She states he knew that on a bill for $108.05, the sales tax would not be more than $7.56. She contends Shimon filed the felony charge without regard for whether his calculation was accurate and that he took these actions, in part, because the county attorney did not call him back in the short time between receipt of the bill and his decision to file charges. Doc. No. 15-1 at 10-11.

Defendants dispute these statements and note that Roskens agreed to pay restitution in the full amount alleged by Shimon ($1,692.08) as part of her plea bargain. They also note she was charged with fraudulent practices, not a violation of the tax code. *See* Doc. No. 25 at 11. Defendants maintain that the criminal charge was supported by probable cause (as found by three different judges)[9] and note that the county attorney did not withdraw the charge against her but dismissed it as a result of a plea bargain in which Roskens agreed to pay full restitution and court costs. *Id.* at 12. Roskens' employment with the Franklin County General Hospital was terminated as a result of the criminal charge against her. *Id.*

Shimon obtained a statewide arrest warrant with a bond of $2,000 cash or surety in conjunction with the criminal complaint. *Id.* at 9. At some point, Shimon had sent Roskens a text message stating she needed to call him immediately. It is disputed whether this was before or after Shimon had obtained the arrest warrant. In any event, Roskens called Shimon after the arrest warrant had been obtained and Shimon told her she was subject to an arrest warrant and to go to her residence. He informed her that an officer would be at her residence by 6:00 p.m. to take her into custody. *Id.* He advised her of the bond amount and did not give her the opportunity to turn herself in voluntarily. *Id.* Roskens was arrested in her home by a uniformed officer in a marked vehicle. *Id.* at 10. At the Eldora Law Enforcement Center, she was processed, booked, fingerprinted, photographed and allowed to post bond two hours later. She retained defense counsel. *Id.*

A Trial Information was filed charging Roskens with the same fraudulent practices charge in the second degree. *Id.* Roskens defended against the charge for seven months before the charge was dismissed on the State's motion. Defendants' dispute this characterization of the resolution of Roskens' case, stating that the charge was dismissed

---

[9] Roskens denies the probable cause determinations are a material fact. Doc. No. 23-1 at 6.

against her as part of a plea bargain in which Roskens agreed to pay restitution in the full amount set forth in the Trial Information and court costs in exchange for dismissal of the case.

Roskens notes that Shimon reports to the Mayor and City Council. Neither the council, nor the committee overseeing the police department, ever approached Shimon about keeping up with required training or changes in the law. The Ackley Police Department does not provide training to its officers.

With regard to the vacation payout issue, Roskens states the City Council was working around the absence of a city administrator without formally amending the handbook. Doc. No. 23-2 at 13. Approval of requests under the handbook could be taken to the committee heads in the absence of a City Administrator. *Id.* at 14. Harms was Roskens' committee head and Harms and Wessels were also on the committee. *Id.* At least two council members were unaware of a handbook provision requiring uncompensated loss of unused vacation time. *Id.* She notes the City Council was generally not operating in compliance with the handbook. When a question arose about what was included in the agenda packet, the City Council had multiple opportunities to review and conduct any inquiries before voting. *Id.* at 13.

Roskens states that the City Council did not approve pursuing a small claims action against Roskens for paid vacation time. *Id.* at 15. Yet, the City Attorney represented the action was being pursued at the direction of the Mayor and City Council. She states the people involved in the decision to pursue the small claims action were Harms, Wessels, Ibeling and Graham. She notes Graham stated he was the sole person to decide whether to pursue the action, but that he discussed it over the phone with members of the City Council. *Id.* However, Harms denied participation in the decision and denied having knowledge of anyone who had participated in the decision. *Id.*

Wessels and Ibeling similarly denied having any participation in the decision or any knowledge of who participated in the decision. *Id.* at 16. Roskens notes that both

Harms and Graham had prior knowledge that she was seeking compensation for her vacation time before the July 13, 2016 council meeting. *Id.* Other potential legal actions on the City's behalf were commonly brought before the council in advance. Roskens notes that more than one council member did not know the official process by which the City was to authorize legal action, but that all powers of the City of Ackley are vested in the council except as provided by law or ordinance. *Id.* There is no ordinance giving the Mayor unilateral authority to pursue legal action on the City's behalf. *Id.* at 17.

The matter concerning Roskens' paycheck with the vacation time was available for inspection prior to the July 13, 2016, council meeting, including the notation of Harms' approval. Harms does not dispute the notation. He approved Roskens' vacation time as did the City Council and the Mayor. Roskens' paycheck with the vacation time bears the Mayor's approval stamp. *Id.* In denying the City's small claims action, the judge found the City Council's and Mayor's approval had been properly obtained and the small claims action was precluded by equitable estoppel and unjust enrichment. *Id.* Roskens notes that had she used her vacation time instead of agreeing to work, it would have been an emergency for the City of Ackley as she was the only person in the Clerk's Office at this time. She states she was entitled to additional payment for unused vacation time pursuant to the handbook. *Id.* at 19.

C.    *Roskens' Claims*

Roskens' complaint alleges the following:

| Count | Cause of Action | Defendant |
|-------|-----------------|-----------|
| Count I | § 1983 claim under the Fourth and Fourteenth Amendments of the United States Constitution for warrantless search | DeBerg |
| Count II | § 1983 claim under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution for invasion of privacy | DeBerg |
| Count III | § 1983 claim under the Fourth and Fourteenth | Shimon |

| | | |
|---|---|---|
| | Amendments of the United States Constitution for warrantless search | |
| Count IV | § 1983 claim under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution for invasion of privacy | Shimon |
| Count V | § 1983 claim under the Fourth and Fourteenth Amendments of the United States Constitution for malicious prosecution | Shimon |
| Count VI | § 1983 claim under the Fourth Amendment of the United States Constitution for unreasonable seizure | Shimon |
| Count VII | § 1983 claim under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution alleging *Monell* liability for warrantless search and invasion of privacy | City of Ackley |
| Count VIII | § 1983 claim under the Fourth and Fourteenth Amendments of the United States Constitution alleging *Monell* liability for malicious prosecution | City of Ackley |
| Count IX | § 1983 claim under the Fourth Amendment of the United States Constitution alleging *Monell* liability for unreasonable seizure | City of Ackley |
| Count X | § 1983 claim under the Fourth and Fourteenth Amendments of the United States Constitution for abuse of process | Graham, Harms, Ibeling, Jones, Wessels, Brass and DeBerg |
| Count XI | § 1983 claim under the Fourth and Fourteenth Amendments of the United States Constitution alleging *Monell* liability for abuse of process | City of Ackley |
| Count XII | Violation of Article 1, section 8 of the Iowa Constitution for warrantless search | DeBerg |
| Count XIII | Violation of Article 1, section 9 of the Iowa Constitution for invasion of privacy | DeBerg |
| Count XIV | Violation of Article 1, section 8 of the Iowa Constitution for warrantless search | Shimon |
| Count XV | Violation of Article 1, section 9 of the Iowa Constitution for invasion of privacy | Shimon |
| Count XVI | Violation of Article 1, section 8 of the Iowa Constitution for unreasonable seizure | Shimon |
| Count XVII | Common law invasion of privacy | DeBerg |

| Count XVIII | Common law invasion of privacy | Shimon |
|---|---|---|
| Count XIX | Common law malicious prosecution | Shimon |
| Count XX | Common law false arrest | Shimon |
| Count XXI | Common law abuse of process | Graham, Harms, Ibeling, Jones, Wessels, Brass, DeBerg and City of Ackley |
| Count XXII | Common law negligent training and supervision of DeBerg | Graham, Harms, Ibeling, Jones, Wessels, Brass, DeBerg and City of Ackley |
| Count XXIII | Common law negligent training and supervision of Shimon | Graham, Harms, Ibeling, Jones, Wessels, Brass, DeBerg and City of Ackley |
| Count XXIV | Defamation per se, or alternatively, defamation | Graham, Harms, Ibeling, Jones, Wessels, Brass, DeBerg and Shimon |
| Count XXV | Respondeat superior liability regarding DeBerg | City of Ackley |
| Count XXVI | Respondeat superior liability regarding Shimon | City of Ackley |

*See* Doc. No. 1.

# III.    ANALYSIS

## A.    *Summary Judgment Standards*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249-50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. The party moving for entry of summary judgment bears "the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential

element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the nonmoving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

### B.    *The Parties' Arguments*

Defendants argue they are entitled to summary judgment on all of Roskens' claims on the following bases:

1.    Roskens' warrantless search and invasion of privacy claims (Counts I-IV, VI-VII, IX, XII-XVIII, XXII-XXIII, XXV-XXVI)[10] fail because she had no objectively reasonable expectation of privacy in a phone bill addressed to the City of Ackley, and even if it did constitute a warrantless search or seizure, a private entity not part of law enforcement cannot be held liable for a constitutional violation of the Fourth Amendment.

2.    Roskens' malicious prosecution claims (Counts VIII, XIX, XXV and

---

[10] Defendants include Roskens' unreasonable seizure claims under § 1983, *Monell* and the Iowa Constitution under this basis as well as her claims of negligent training and supervision and respondeat superior with regard to Shimon and DeBerg. *See* Doc. No. 17 at 6-7.

XXVI)[11] fail because there was no completely favorable termination of the criminal proceedings, there was probable cause for filing the charge and there was no malice in instituting the charge.

3.      Roskens' claims of false arrest and malicious prosecution (Counts V, XIX, XX, XXV and XXVI) under section 1983 claim because she was arrested with probable cause

4.      Roskens' claims of abuse of process (Counts X, XI) fail for lack of proof against defendants

5.      Roskens' defamation claims (Counts XXIV, XXV, XXVI) fail for lack of proof

6.      Roskens' common law claims (Counts XX, XXI, XXII, XXIII, XXIV, XXV, XXVI) are barred by discretionary act immunity pursuant to Iowa Code §§ 670.4(1)(c) and 670.12

7.      Roskens' causes of action alleging "Monell Liability" (Counts VII, VIII, IX) fail for lack of proof

*See* Doc. No. 17.

Roskens seeks summary judgment as to Shimon and DeBerg's liability on Counts I, III, VI, and XVII-XX of her complaint. Counts I and III are § 1983 claims based on an alleged warrantless search. Count VI is a § 1983 claim based on an alleged warrantless seizure. Counts XVII through XX are all state common law claims. Counts XVII and XVIII are invasion of privacy claims. Count XIX is a malicious prosecution claim and Count XX is a false arrest claim.

I will address defendants' motion first, followed by Roskens' for any remaining claims covered by her motion.

---

[11] These include a § 1983 *Monell* claim, a common law malicious prosecution claim, and the respondeat superior claims. *See* Doc. No. 17 at 11.

*C.*    *Defendants' Motion*

   *1.*    *Fourth Amendment Violation and Invasion of Privacy Claims - (Counts I-IV, VI-VII, IX, XII-XVIII, XVI)*

      *a.*    *Parties' Arguments*

Defendants argue Roskens had no objectively reasonable expectation of privacy in a U.S. Cellular bill addressed to the "City of Ackley" with a phone number within the bill assigned the name "City of Ackley." *See* Doc. No. 17 at 3. They note that Roskens was neither the sender nor the addressee of the U.S. Cellular Bill and contend she has no standing to assert a Fourth Amendment violation as a result of DeBerg's opening of the bill. They note that under 18 U.S.C. § 1702, obstruction of correspondence occurs when someone takes a letter to pry into the business or secrets of another from a mail carrier "before it has been delivered to the *person* to whom it was directed." In other words, it is the *person* to whom the letter is addressed, not the *address* that makes the difference for purposes of that statute. Defendants also argue that there can be no Fourth Amendment violation because DeBerg is a private party, not part of law enforcement.

As to Counts I and III regarding an alleged warrantless search under the Fourth Amendment, Roskens argues the Fourth Amendment applies to her mail and that the inadvertent delivery does not excuse the unlawful intrusion into her privacy. Doc. No. 22-1 at 5-6. She notes that the billing statement had been mailed to her home address between August 2016 and March 6, 2017, that she had personally paid the bill and that the envelope was addressed the same as it had been on March 6, 2017. She contends these facts establish a legitimate expectation of privacy in the contents of the bill. She argues DeBerg is a government employee, making her examination of the envelope's contents a government search and that Shimon performed a separate warrantless search

when he removed the billing statement from the envelope into which DeBerg had returned it. She contends the absence of a warrant renders these searches presumptively unreasonable.

As to Counts II and IV regarding invasion of privacy under the Fourteenth Amendment, Roskens argues defendants have failed to specifically challenge these claims. Doc. No. 22-1 at 9. She argues the Fourteenth Amendment is violated when highly personal and confidential information is disclosed to the public by state actors and that Roskens had a legitimate expectation of privacy in the billing statement, which she contends DeBerg and Shimon knew was intended for Roskens and regarded her personal cell phone.

As to Count VI regarding unreasonable seizure under the Fourth Amendment, Roskens argues that the warrant affidavit for her arrest contained information that was illegally obtained as a result of the alleged warrantless search of the billing statement. *Id.* at 11. She contends that without this information, the warrant lacks probable cause. She argues that the warrant lacks probable cause even with the illegally-obtained information because Shimon's calculation of the unpaid sales tax amount was arbitrarily based on the total amount of a credit Roskens had received on the bill and Shimon failed to conduct any investigation into the actual amount of time Roskens had been receiving the tax exemption or the accurate amount. She also argues Shimon had no grounds to believe Roskens possessed the requisite intent to defraud. *Id.* at 15. She contends he had no reasonable basis for filing the charge.

As to Counts XII and XIV regarding an alleged warrantless search under the Iowa Constitution, Roskens argues that defendants' motion for summary judgment as to these claims should be denied because they failed to cite any Iowa authority and relied solely on federal law. She argues that the Iowa Constitution provides more stringent protections of a person's rights than under the United States Constitution but does not cite any Iowa law demonstrating that a more stringent protection would apply under the circumstances

of this case. She makes similar arguments with regard to Counts XIII and XV for invasion of privacy under the Iowa Constitution and Count XVI for unreasonable seizure under the Iowa Constitution. *Id.* at 19-21.

Finally, with regard to Counts XVII and XVIII alleging common law claims of invasion of privacy, Roskens notes that the elements of this offense are "an intentional intrusion in a matter the plaintiff has a right to expect privacy" and an act "highly offensive to a reasonable person." *Id.* at 21-22 (quoting *Koeppel v. Spiers*, 808 N.W.2d 177, 180 (Iowa 2011)). She contends these elements can be proven by the fact that DeBerg and Shimon knew the billing statement was intended for Roskens and regarded her personal cell phone. *Id.* at 22.

While I appreciate that Roskens has made various claims that consist of different elements and standards, I also note that each of these claims requires a finding that Roskens had a privacy interest in the letter at issue. Without this essential element, each of the above claims fails. Prior to discussing that point, I will address defendants' argument that DeBerg's opening of the letter did not constitute a government action, but a private one.

### b.     Did a Private Party Open the Letter?

Section 1983 provides "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States. . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The "essential elements of a § 1983 claim are: (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability and causation to violate the constitutional right." *Kuha v. City of Minnetonka*, 365 F.3d 590, 606 (8th Cir. 2003), *abrogated on other grounds*, *Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385 (8th Cir. 2007). "[T]o find whether an official acts under color

of law, [courts] look to see whether a sufficient nexus exists between the official's public position and the official's harmful conduct. Absent any actual or purported relationship between the [official's] conduct and his duties . . . the [official] cannot be acting under color of state law." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 900-01 (8th Cir. 2009).

I do not find this to be a close issue. The only case defendants cite in support is *Walter v. United States*, 447 U.S. 649, 656 (1979). In that case, a package containing individual boxes of film was mistakenly delivered to the wrong company. The company opened the package and called the FBI after determining it was not the intended recipient. *Walter*, 447 U.S at 651-52. The FBI viewed the films without obtaining a warrant. *Id.* The Court held that even though the FBI was lawfully in possession of the package, its screening of the films violated the Fourth Amendment. *Id.* at 659.

Unlike the third party in *Walter*, DeBerg is not a private party. She had to be acting as a public official when opening mail addressed to the City of Ackley, as she otherwise would have had no authority to do so. Defendants offer no facts from which one could conclude DeBerg did not open the letter as part of her duties as City Clerk. *See West v. Atkins*, 487 U.S. 42, 50 (1988) ("generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."). This element of Roskens' § 1983 claims is satisfied and summary judgment is denied on this basis.

### c.     *Did Roskens Maintain a Privacy Interest in the Letter?*

The Fourth Amendment and Article I, section 8 of the Iowa Constitution protect "[t]he right of the people to be secure in their persons, houses, papers(,)[12] and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; Iowa Const. art. I, § 8. "[I]n order to have standing to challenge a search or seizure under the Fourth

---

[12] The United States Constitution uses the Oxford comma while the Iowa Constitution does not.

Amendment, the defendant must have a legitimate expectation of privacy in the places or objects searched." *United States v. Manuel Rodriguez-Arreola*, 270 F.3d 611, 616-17 (8th Cir. 2001) (citation omitted). Sealed letters sent through the United States postal service are "papers" within the meaning of the Fourth Amendment. *See Ex Parte Jackson*, 96 U.S. 727, 733 (1877); *United States v. Johnson*, 171 F.3d 601, 603 (8th Cir. 1999) (noting that Fourth Amendment applies to items placed in the mail.). However, there is no reasonable expectation of privacy to the information visible on the outside of the envelope. *Ex Parte Jackson*, 96 U.S. at 733 ("Letters and sealed packages are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles."). A reasonable expectation of privacy requires that the person "exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). The issue here is whether Roskens maintained a privacy interest in a letter addressed to the City of Ackley with her home address.

It is undisputed that the billing statement was delivered to the City of Ackley, was addressed to "City of Ackley" and contained Roskens' home address under the "City of Ackley" name. Roskens' name was nowhere on the outside of the envelope. It is also undisputed that from July 2016 through December 2016, the U.S. Cellular bill had been delivered to Roskens' home address.

The subjective component of the privacy question is satisfied. Roskens had been receiving these letters at her home address since August 2016. There is no evidence that she openly shared her billing statements with others. *See United States v. Welliver*, 976 F.2d 1148, 1151 (8ht Cir. 1992) (noting that the first question "involves determining whether the person, by her conduct, has demonstrated an actual expectation of privacy, or sought to preserve something as private."). Whether society is willing to recognize this expectation of privacy as legitimate or reasonable is only slightly a more difficult

question.

Courts have held that an individual does not have a legitimate expectation of privacy in mail if he or she is neither the sender nor the recipient listed. *See United States v. Lewis*, 738 F.2d 916, 919, n. 2 (8th Cir. 1984) (assuming without deciding that opening a bill addressed to someone other than defendant "cannot be said to have infringed *his* reasonable privacy expectations"); *Murphy v. Morris*, 849 F.2d 1101, 1106 (8th Cir. 1988) ("The mail which was allegedly intercepted and copied in this case was addressed to Chris Marshall and sent from his mother, Mrs. Wanda Marshall. Murphy can claim no legitimate expectation of privacy in another inmate's mail."); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) ("Because Graf was neither the sender nor the addressee of the package and thus has no privacy right in it, he therefore has no standing to make [a suppression] request."); *United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984) (per curiam) (declining to recognize "any legitimate expectation of privacy in the contents of a package addressed not to defendants but to another party"); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) ("Arguably, a defendant who is neither the sender nor the addressee of a package has no privacy interest in it, and, accordingly, no standing to assert Fourth Amendment objections to its search."); *United States v. Stokes*, 829 F.3d 47, 53 (1st Cir. 2016) ("Stokes cannot shoulder his burden of demonstrating that he has a reasonable expectation of privacy in envelopes where he is not listed as an addressor or an addressee."). This precedent is also consistent with 18 U.S.C. § 1702, which criminalizes opening mail to pry into the business or secrets of another "before it has been delivered to the *person* to whom it was directed." Further, Fourth Amendment rights are personal rights. *See Rakas v. Illinois*, 439 U.S. 128, 133 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted"). The right is attached to a person, not to property that has no obvious connection to the person challenging the search.

I find that Roskens did not have a legitimate expectation of privacy in the billing statement as she was neither the addressor nor the addressee. As such, I find that she has no standing to assert a violation of her rights under the Fourth Amendment of the United States Constitution or Article I section 8 of the Iowa Constitution arising out of DeBerg's and Shimon's opening/search of the billing statement. Defendants are entitled to summary judgment on Counts I, III, XII and XIV. They are also entitled to summary judgment in part on Counts VI and XVI.[13]

With regard to Counts II and IV (§ 1983 claims of invasion of privacy under the Fourteenth Amendment[14] against each defendant) and Counts XIII and XV (invasion of privacy under the Iowa Constitution against each defendant), Roskens argues that summary judgment should be denied to defendants because they did not separately argue why these claims fail as a matter of law based on the undisputed facts. The United States Supreme Court has determined that "one component of the protection of the right to privacy embodied in the fourteenth amendment is an individual's interest in avoiding disclosures of personal matters." *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993) (citing *Whalen v. Roe*, 429 U.S. 589 (1977)). This "right to confidentiality" protects "against public dissemination of information" concerning "highly personal matters representing the most intimate aspects of human affairs." *Eagle v. Morgan*, 88

---

[13] Summary judgment on Counts VI (unreasonable seizure under the Fourth Amendment) and XVI (unreasonable seizure under Article 1, section 8 of the Iowa Constitution) is granted to the extent Roskens argues the warrant for her arrest was based on illegally obtained information. However, these claims are also based on an argument that the warrant lacked probable cause for other reasons – Shimon's calculation of the value or unpaid sales tax amount and lack of evidence regarding intent. This aspect of Counts VI and XVI will be addressed in conjunction with Roskens' malicious prosecution claims, *infra* Section III(C)(2).

[14] Roskens' complaint alleges violations of the Fourth, Fifth, Ninth and Fourteenth Amendment. However, her resistance focuses solely on the Fourteenth. As such, I will address this claim as alleged Fourteenth Amendment violation.

F.3d 620, 625 (8th Cir. 1996) (internal quotation omitted). The Eighth Circuit has described the standard for this type of violation as "exacting:"

> To violate a person's constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant breach of a pledge of confidentiality which was instrumental in obtaining the personal information. To determine whether a particular disclosure satisfies this exacting standard, we must examine the nature of the material opened to public view to assess whether the person had a legitimate expectation that the information would remain confidential while in the state's possession. When the information is inherently private, it is entitled to protection.

*Id.* (cleaned up). Invasion of privacy under the Iowa Constitution is similar to invasion of privacy under the Fourteenth Amendment and Iowa courts often rely on the federal counterpart for interpretation. *See State v. Hartog*, 440 N.W.2d 852, 854 (Iowa 1989).

I find it important to first determine exactly what Roskens is alleging in her invasion of privacy claims. Her constitutional claims under § 1983 and the Iowa Constitution (Counts II, IV, VIII and XV), allege that the "opening and reviewing" of the correspondence and "seeking to obtain private information" from her account provider invaded her privacy. *See* Doc. No. 1 at 18-20; 22-24; 45-47; 49-51. With regard to DeBerg, she alleges disclosure to Shimon of her "private correspondence" gave unreasonable publicity to her private life and/or unreasonably placed her in a false light. *Id.* at 19, 46. With regard to Shimon, she contends (only with regard to the § 1983 claim) that his disclosure of her private correspondence to Daggs (the former mayor) and Diemer (the City's water billing clerk) gave unreasonable publicity to her private life and/or unreasonably placed her in a false light. *Id.* at 23. Therefore, her claims present two issues: the initial opening/search of the letter and the disclosure of the contents to others. Her common law claims of invasion of privacy (Counts XVII and XVIII) also address both the initial search and disclosure to others. *Id.* at 53-56.

Defendants seek summary judgment only with regard to the initial opening/search of the letter and seem to argue that Roskens has no privacy interest in any aspect of the billing statement. They make no argument with regard to whether Roskens maintained an expectation of privacy in the *contents* of the billing statement such that they could not be disclosed to others. While I have serious doubts as to the viability of these claims, I agree with Roskens that defendants have failed to explain why they are entitled to summary judgment on these specific claims. Because these claims allege two separate privacy interests and, in most cases, two separate invasions of privacy (intrusion and disclosure), I find summary judgment inappropriate when defendants have addressed only one aspect of those claims. I decline to grant defendants' motion as to Counts II, IV, XIII and XV as defendants have failed to meet their burden of establishing why they are entitled to judgment as a matter of law on these claims.

### d.     *Discretionary Act Immunity*

With regard to Counts XVII and XVIII, alleging common law claims of invasion of privacy, defendants rely on the same argument that Roskens did not have an objectively reasonable expectation of privacy in the U.S. Cellular bill. They also argue that her common law claims are barred by discretionary act immunity pursuant to Iowa Code §§ 670.4(1)(c) and 670.12. *See* Doc. No. 17 at 17.

With regard to discretionary act immunity, defendants argue that the City of Ackley is immune from liability for "[a]ny claim based upon an act or omission of an officer or employee of the municipality . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused." Iowa Code § 670.4(1)(c). They argue the individual defendants are immune for their discretionary acts under Iowa Code § 670.12, which provides, "[a]ll officers and employees of municipalities are not personally liable for claims which are exempted

under section 670.4, except claims for punitive damages, and [workers' compensation] actions." *See also Thomas v. Gavin*, 838 N.W.2d 518, 524 (Iowa 2013) ("Reading section 670.12, it seems reasonable to conclude that the available exemptions from tort liability for local officials are identical to the section 670.4 exemptions for municipalities.").

Roskens argues defendants are not entitled to immunity because Iowa Code § 670.2 provides that ". . . every municipality is subject to liability for its torts and those of its officers . . . acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function." *See* Doc. No. 22-1 at 36. She contends warrantless arrest and unlawful prosecution are not discretionary acts and a city official does not have "discretion" as to when to open a misdelivered piece of private mail. *Id.* She notes the first part of Iowa Code § 670.4(1)(c)[15] does not apply because there is no statute, ordinance, or regulation which DeBerg was carrying out in opening the mail. Under the second part, Roskens notes this is subject to a two-part test:

> The first inquiry is whether the challenged conduct was a matter of choice for the acting employee. Then, if we find an element of judgment is

---

[15] This section provides:

> The liability imposed by section 670.2 shall have no application to any claim enumerated in this section. As to any such claim, a municipality shall be liable only to the extent liability may be imposed by the express statute dealing with such claims and, in the absence of such express statute, the municipality shall be immune from liability
>
> ...
>
> c. Any claim based upon an act or omission of an officer or employee of the municipality, exercising due care, in the execution of a statute, ordinance, or regulation whether the statute, ordinance or regulation is valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the municipality or an officer or employee of the municipality, whether or not the discretion is abused.

Iowa Code § 670.4(1)(c).

involved in the challenged conduct, we must determine whether the judgment is of the kind the discretionary function exception was designed to shield. This prong of the test protects governmental actions and decisions based on considerations of public policy grounded on social, economic, and political reasons . . . . If the answer to either of these questions is negative, then the discretionary function exemption does not apply.

*Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 443 (Iowa 2002) (internal citation omitted). Roskens emphasizes that only choices based upon the "meaningful exercise of discretion" are immune from liability. Doc. No. 22-1 at 38 (quoting *Madden v. City of Eldridge*, 661 N.W.2d 134, 139 (Iowa 2003)). She argues there are no legitimate governmental policies to be considered when deciding to open mail. The decision also lacks any social, economic or political considerations. She argues it is a mere operational decision and is not entitled to discretionary immunity. *Id.* (citing *Hansen v. City of Audubon*, 378 N.W.2d 903, 906 (Iowa 1985).

I agree with Roskens that with regard to DeBerg, the decision to open the letter does not meet the second part of the test in that it did not require "considerations of public policy grounded on social, economic, and political reasons." *Doe*, 652 N.W.2d at 443. *See Messerschmidt*, 654 N.W.2d at 882 (concluding second element of defense was not established where city worker removed a traffic control barricade allowing drunk driver to strike and injure plaintiff); *Schmitz v. City of Dubuque*, 682 N.W.2d 70, 76 (Iowa 2004) (concluding city failed to meet second part of discretionary immunity test because it did not produce any evidence that the choice to add asphalt overlay to bike trail without raising the shoulders or grinding off the old asphalt was a decision that weighed social, economic or political policies). Defendants argue that DeBerg's conduct was carried out "pursuant to the public policy of protecting the public fisc of the City of Ackley by ensuring both that all bills rightfully due be paid and that the City's Tax ID not be used for purposes other than City of Ackley business." Doc. No. 17 at 19. I find that DeBerg is not entitled to summary judgment on the common law invasion of privacy counts or

any other counts based on discretionary immunity for opening mail addressed to the City of Ackley.

With regard to Shimon, the relevant decision was whether to conduct further investigation into the letter and initiate criminal proceedings. The parties have not cited a case, and I have come across only one, in which an officer's conduct is evaluated under the discretionary function immunity statute. *See Cline v. Union Cnty., Iowa*, 182 F. Supp. 2d 791, 799-801 (S.D. Iowa 2001). In *Cline*, the court considered whether defendants (including two sheriffs) were entitled to discretionary function immunity on plaintiff's claims of false arrest, malicious prosecution, intentional infliction of emotional distress and § 1983 claims for violations of the Fourth, Fifth and Fourteenth Amendments. *Id.* The court was unable to find an Iowa case addressing the issue of whether a warrantless arrest and prosecution without probable cause was a matter of judgment and the kind of judgment subject to discretionary-function immunity. *Id.* at 800. It noted that Iowa courts often look to federal decisions interpreting the Federal Tort Claims Act (FTCA) as persuasive authority in interpreting Iowa Code § 670.4. *Id.* (citing *Gordon v. Ottumwa Comm. Sch. Dist.*, 115 F. Supp. 2d 1077, 1084-85 (S.D. Iowa 2000)). Based on federal case law, the court anticipated that Iowa courts would hold the legislature did not intend to shield officers and municipalities from liability for an illegal arrest and prosecution. *Id.* at 801. While the basis for the charges and arrest here are contested, I agree with the reasoning in *Cline* that Shimon's challenged conduct is not entitled to discretionary function immunity. As such, I decline to grant summary judgment to Shimon on the common law invasion of privacy claims based on discretionary function immunity.

Similar to the constitutional claims, defendants have failed to demonstrate they are entitled to judgment as a matter of law on Roskens' common law claims of invasion of privacy. There are two different privacy interests at issue here. The first is based solely on the outside of the letter for purposes of determining whether the City violated her

rights by opening it. The second is based on disclosure of the contents of the bill, upon discovering that it was Roskens' cell phone. Defendants have demonstrated only that there was no privacy interest based on the exterior of letter. They have offered no argument addressing the disclosure of the contents that is also a basis of Roskens' invasion of privacy claims. It is defendants' burden to prove they are entitled to judgment as a matter of law on all claims for which they seek summary judgment. Because defendants have not met that burden as to these claims, summary judgment is denied on Roskens' common law invasion of privacy claims (Counts XVII and XVIII).

### *e.* *Summary*

I find that defendants are entitled to summary judgment on the following counts:

- Count I - § 1983 claim based on warrantless search against DeBerg

- Count III - § 1983 claim based on warrantless search against Shimon

- Count VI - § 1983 claim based on unreasonable seizure against Shimon (based on the allegation that an arrest warrant was obtained based on an information from an unreasonable search)

- Count XII – violation of Article 1, section 8 of the Iowa Constitution for warrantless search against DeBerg

- Count XIV – violation of Article 1, section 8 of the Iowa Constitution for warrantless search against Shimon

- Count XVI – violation of Article 1, section 8 of the Iowa Constitution for warrantless seizure against Shimon (based on the allegation that an arrest warrant was obtained based on an information from an unreasonable search)

Defendants are not entitled to summary judgment on the invasion of privacy claims under § 1983, the Iowa Constitution and Iowa common law (Counts II, IV, XIII and XV, XVII, XVIII).

## 2.    *Malicious Prosecution Claims – (Counts V and XIX)*

Roskens alleges two claims of malicious prosecution – one under § 1983 based on violations of the Fourth and/or Fourteenth Amendments (Count V) and one under Iowa common law (Count XIX).  Defendants argue they are entitled to summary judgment on Roskens' malicious prosecution claims because there was probable cause to charge Roskens with Fraudulent Practices and the charge was resolved by way of plea bargain.  Roskens disputes that dismissal of the charge can be deemed a plea bargain as she only ever entered a plea of not guilty and contends that the State's dismissal of the charge shows there was want of probable cause.  *See* Doc. No. 22-1 at 23-24.

With regard to Roskens' § 1983 claim of malicious prosecution based on violations of the Fourth and/or Fourteenth Amendment, the Eighth Circuit has stated:

> Section 1983 only provides a remedy for violations of rights expressly secured by federal statutes or the Constitution.  *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980); *McNees v. City of Mountain Home*, 993 F.2d 1359, 1361 (8th Cir. 1993) (claim for malicious prosecution is not cognizable under § 1983 because it does not allege a constitutional or federal statutory injury).  The Constitution does not mention malicious prosecution nor do plaintiffs cite a basis for a federal action for malicious prosecution.  Moreover, this court has uniformly held that malicious prosecution by itself is not punishable under § 1983 because it does not allege a constitutional injury.  *Gunderson v. Schlueter*, 904 F.2d 407, 409 (8th Cir. 199).  Thus, plaintiffs' allegation of malicious prosecution cannot sustain a civil rights claim under § 1983.

*Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001).[16]  Roskens attempts to tie her § 1983 claim to a constitutional violation of the Fourth and/or Fourteenth Amendments based on an allegation that Shimon intentionally failed to investigate or conducted a knowingly reckless investigation and lacked probable cause to initiate a

---

[16] The *Kurtz* court noted that a false arrest claim under § 1983 similarly fails as a matter of law where the officer had probable cause to make the arrest.  *Kurtz*, 245 F.3d at 758 (citing *Anderson v. Franklin Cnty.*, 192 F.3d 1125, 1131 (8th Cir. 1999)).

criminal prosecution against her. *See* Doc. No. 1 at 25. One district court in the Eighth Circuit has narrowly interpreted *Kurtz* and concluded the Eighth Circuit left open the possibility of a malicious prosecution claim under § 1983, "as either a Fourth Amendment violation of a substantive right or a procedural due process violation, where plaintiff have alleged an underlying cognizable constitutional violation." *See Brown v. City of Pine Lawn, Missouri*, No. 4:17CV01542 ERW, 2018 WL 950211, at *5 (E.D. Mo. Feb. 20, 2018) (citing Eighth Circuit cases recognizing malicious prosecution claims may be considered constitutional violations under the Fourth or Fourteenth Amendments). It also emphasized that the *Kurtz* court stated, "an allegation of malicious prosecution *without more* cannot sustain a civil rights claim under § 1983." *Id.* (quoting *Kurtz*, 245 F.3d at 758) (emphasis added)).

Defendants do not challenge Roskens' § 1983 malicious prosecution claim based on *Kurtz*. However, even if *Kurtz* did not preclude Roskens' malicious prosecution claim, Shimon would still be entitled to summary judgment because, as explained below, the record shows he had probable cause to initiate the criminal prosecution. *See Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013) (concluding that even if *Kurtz* did not preclude plaintiff's malicious prosecution claim, summary judgment would still be proper where the officers had probable cause to arrest plaintiff and initiate criminal prosecution).

Under Iowa law, the tort of malicious prosecution requires proof of the following elements:

> (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff.

*Linn v. Montgomery*, 903 N.W.2d 337, 345 (Iowa 2017). Defendants argue Roskens cannot meet the third, fourth or fifth elements.

Under Iowa law, a person commits fraudulent practice in the second degree where "the amount of money or value of property or services involved exceeds one thousand five hundred dollars but does not exceed ten thousand dollars." Iowa Code § 714.10. Defendants argue Shimon based the criminal complaint on information that Roskens was using the City's tax ID number without city authority for her own phone and someone else's phone. They note that three separate judges found there was probable cause to support the charge and Roskens agreed to pay restitution and court costs in exchange for dismissal.

Regardless of whether the matter was terminated favorably[17] for Roskens or there was malice in bringing the prosecution, I find that Roskens' malicious prosecution claims fail as a matter of law because there was probable cause to support the charge. "Probable cause exists when the totality of the circumstances demonstrates that a prudent person would believe that the arrestee has committed or was committing a crime." *Kuehl v. Burtis*, 173 F.3d 646, 650 (8th Cir. 1999). *See also Williams v. City of Carl Junction*, 480 F.3d 871, 877 (8th Cir. 2007) ("Probable cause exists if at the moment the officer issued the citation 'the facts and circumstances within [the officer's] knowledge and of which [the officer] had reasonably trustworthy information were sufficient to warrant a prudent man in believing'" that the plaintiff had violated a criminal statute or ordinance.). "A totality of the circumstances test is used to determine whether probable cause exists." *United States v. Gleich*, 397 F.3d 608, 612 (8th Cir. 2005). "Courts should apply a common sense approach, and considering all relevant circumstances, determine whether probable cause exists." *Id.* "A warrant based upon an affidavit containing 'deliberate

---

[17] This element of Roskens' claim would likely fail as Section 660 of the Restatement (Second) of Torts provides: "A termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if (a) the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused . . .").

falsehood' or 'reckless disregard for the truth' violates the Fourth Amendment" and subjects the officer who submitted the affidavit to § 1983 liability." *Bagby v. Brondhaver*, 98 F.3d 1096, 1098 (8th Cir. 1996) (quoting *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). Whether probable cause existed at the time of arrest is a question of law. *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010).

Roskens argues that dismissal of the charge by the State prior to trial is prima facie evidence of a want of probable cause. The Iowa Supreme Court has stated that "[s]atisfactory termination of the original proceedings [underlying a malicious prosecution claim] creates a prima facie showing of want of probable cause which in turn allows a presumption of malice." *Ashland v. Lapiner Motor Co.*, 75 N.W.2d 357, 360 (Iowa 1956). Of course, the parties dispute whether Roskens' agreement to pay $1,692.08 and court costs amounts to a favorable termination for Roskens. A satisfactory termination may occur through: acquittal following trial, dismissal before trial by the prosecuting attorney or refusal of the grand jury to indict the plaintiff. *See* Iowa Civil Jury Instructions 2200.7 (2012). In *Berkey v. City of Mingo*, the Iowa Court of Appeals found that plaintiff had established a prima facie showing of a want of probable cause because the prosecutor dismissed the charges against her without proceeding to trial after determining there was insufficient evidence to prosecute. *Berkey v. City of Mingo*, 840 N.W.2d 727 (Iowa Ct. App. 2013). The court stated: "However, this showing may be overcome by evidence in the record supporting a finding of probable cause. The existence of probable cause does not 'depend upon the guilt of the accused party in fact, but upon the honest and reasonable belief of the party commencing the prosecution.'" *Id.* (quoting *Philpot v. Lucas*, 70 N.W. 625, 626 (Iowa 1897)). In other words, the dismissal by itself does not conclusively establish want of probable cause.

Defendants rely on the fact that three separate judges found there was probable cause. Judge Dunn, Magistrate Judge in the Second Judicial District of Iowa, issued an arrest warrant stating: "Complaint and affidavit filed and probable cause found that the

defendant committed the offense as charged." Doc. No. 13-2 at 124-25. Judge Ahlers, District Associate Judge for the Second Judicial District of Iowa, entered an initial appearance order stating: "The Court has reviewed the complaint and finds probable cause to believe the defendant committed the offense(s)." *Id.* at 143-44. Finally, Judge Kester, District Associate Judge for the Second Judicial District of Iowa, entered the following order approving the Trial Information:

> On this date, I have reviewed the attached Trial Information and the accompanying Minutes of Testimony and find that they contain evidence which, if unexplained, is sufficient to warrant a conviction by a trial jury. Being satisfied from the showing made that the case should be prosecuted, I approve the Trial Information.

*Id.* at 146. This evidence also does not conclusively establish probable cause, as the probable cause determination requires consideration of what the officer believed at the time he or she initiated criminal proceedings. *See Brinegar*, 338 U.S. at 175-76 ("Probable cause exists where the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.").

The undisputed facts are that Shimon had knowledge of a cell phone bill for Roskens' personal cell phone in addition to another cell phone that had used the City of Ackley's tax ID number. While defendants' statement of facts does not specify what "investigation" he performed regarding the bill, they cite to Shimon's deposition, his answers to interrogatories in which he details parts of his investigation and the charging documents and other documents filed in the criminal case. *See* Doc. No. 13-1 at 5 (citing Doc. No. 13-2 at 83-84; 124-80; 188-91). Shimon's statement attached to the complaint indicates he verified with two city officials who had been there during Roskens' tenure that Roskens did not have permission or authority to use the City's tax ID number for this purpose. *See* Doc. No. 13-2 at 152. He also contacted the Iowa Attorney General's

office and was advised that a city's tax ID could be used only for official business. Doc. No. 23-2 at 7.

Roskens argues Shimon did not have probable cause to charge her with fraudulent practices in the second degree based on his calculations of how much Roskens benefited by using the City's tax ID number. Roskens argues Shimon arbitrarily based the amount on the total amount of a credit Roskens had received on the bill rather than on any known amount of sales tax that was not paid. She also argues that he made no attempt to determine the actual amount of time for which Roskens had been receiving the tax exemption and based his calculation on how long another police officer remembered Roskens possessing a cell phone. She states he knew that on a bill for $108.05, the sales tax would not be more than $7.56. She contends Shimon filed the felony charge without regard for whether his calculation of the amount was accurate and that he took these actions, in part, because the county attorney did not call him back in the short time between receipt of the bill and his decision to file charges. Doc. No. 15-1 at 10-11. Roskens' criminal matter was resolved upon her agreement to pay the number Shimon came up with - $1,692.08. The affidavit attached to the complaint provides:

> The defendant was employed by the City of Ackley Iowa as the City Clerk, on todays [sic] date the new City Clerk received a US Cellular bill in the mail addressed to the City Of Ackley but had an address of the defendants residence on it of 701 7th Ave. Ackley Iowa. This raising concern the Ackley Clerk opened it since it was address to the City and discovered that it was a bill for two cell phone numbers that are not in or City records. Upon further investigation it was discovered that the numbers were still active under Cynthia Roskins [sic] and we as the City could not gain access to the account because it is solely managed by Cynthia Roskins. US Cellular did confirm that this account is using the City of Ackley Iowa Tax Exempt ID number issued for official city business only. I examined the bill that I took into evidence and figure back until a minimum the date that I knew Cynthia to have this number and could document it and took the tax savings listed on the bill that she had been paying out of her personal monies at the amount of 32.54 from dec. [sic] 2013 till present and the total on the current information I have is 1692.08 in taxes and fees that she saved by

using the city tax exempt number.

Doc. No. 13-2 at 150.

I find that based on the totality of the circumstances known to Shimon at the time he brought the charge, there was probable cause for him to believe that Roskens had committed a crime of fraudulent practice in the second degree. The complaint listed the relevant code section as § 714.10(1)(A), which defines the degree of fraudulent practices. Section 714.8 defines fraudulent practices. Specifically, subsection 10 states that a person who "[d]oes any act expressly declared to be a fraudulent practice by any other section of the Code" is guilty of fraudulent practices. Iowa Code § 714.8(10). Section 714.14 establishes value for purposes of fraudulent practices. The value of property "is its highest value by any reasonable standard at the time the fraudulent practice is committed." Iowa Code § 714.14. "Reasonable standard includes but is not limited to market value within the community, actual value, or replacement value." *Id.* At the time, Shimon had only the U.S. Cellular bill and the information from former and current City employees and the Iowa Attorney General. The U.S. Cellular bill lists "Other Charges & Credits" of $32.54 CR," which is the number Shimon used to calculate the value in addition to the earliest possible date he could verify with another city employee of Roskens having that phone number. *See* Doc. No. 19 at 34; 66-69. When DeBerg called U.S. Cellular in the presence of Shimon, U.S. Cellular confirmed the account was in the City's tax ID number but would not provide any other information because Roskens was the only one authorized on the account. Doc. No. 19 at 104-05. I do not find that Shimon's calculation of the value based on the "Other Charges & Credits" destroys probable cause even if that calculation was ultimately flawed.

Roskens contends that Shimon's "arbitrary" calculation constitutes "affirmative reckless inclusion of false information." *Id.* at 12. She criticizes the timing of the charge, arguing that Shimon should have taken more time and conducted a more thorough

investigation before filing the charge. *Id.* at 12-13. While Shimon certainly could have investigated further, he was not obligated to do so once he believed he had probable cause to support the charge. There is no evidence in the record indicating his actions were lacking in good faith or that it was unreasonable for him to believe Roskens had committed the offense charged based on his investigation.

Roskens also challenges probable cause based on lack of evidence of intent to commit fraud. Doc. No. 22-1 at 14-15. "Intent may be shown by circumstantial evidence and the reasonable inferences drawn from that evidence." *State v. Acevedo*, 705 N.W.2d 1, 5 (Iowa 2005). "To deliberately make false statements or give false information in order to gain some advantage is to act with fraudulent intent in the criminal context." *Id.* Based on Shimon's investigation, Roskens did not have approval to use the City tax ID number for her personal cell phone. Contrary to Roskens' assertion, her immediate call to U.S. Cellular upon Shimon's text does not necessarily disprove that she had criminal intent when she used the City's tax ID number without authorization. It was not unreasonable for Shimon to conclude, based on the facts and circumstances, that there was intent to defraud.

Based on all the information available to Shimon at the time, I find there was probable cause to believe that Roskens had committed fraudulent practices in the second degree.[18] Defendants are entitled to summary judgement on Counts V and XIX.

### 3.    *False Arrest Claim – (Count XX)*

Defendants challenge Roskens' false arrest claims also based on probable cause.

---

[18] Roskens' unreasonable seizure claims (Counts XI and XVI) are based, in part, on a similar argument that probable cause was lacking based on Shimon's calculation. *See* Doc. No. 22-1 at 12-16. Because I find that this aspect of Shimon's investigation does not defeat probable cause, defendants are entitled to summary judgment on Roskens' unreasonable seizure claims under § 1983 and the Iowa Constitution (Counts VI and XVI).

False arrest under Iowa law consists of the following elements: "(1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678-79 (Iowa 1983). An arrest is not unlawful if the officer "acts with probable cause, . . . even though the person arrested turns out to be innocent." *Id.* at 679. "A false arrest case involving the issue of probable cause turns on what the officer knew at the time of the arrest, not what he learned later." *Id.* at 678.

Because I have found there was probable cause to support the criminal charge against Roskens based on the undisputed facts viewed in the light most favorable to Roskens, Shimon is entitled to summary judgment on Count XX.

### 4.    *Abuse of Process Claims – (Counts X and XXI)*

Roskens alleges abuse of process under § 1983 based on a violation of the Fourteenth Amendment of the United States Constitution (Count X) and under Iowa common law (Count XXI) pertaining to the civil suit brought against her to recoup payout of vacation time. Beginning with Roskens' common law claim, abuse of process is "the use of legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it was not designed." *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001). To establish a claim for abuse of process under Iowa law, Roskens must establish: "(1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the abuse." *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Barnhill*, 885 N.W.2d 408, 419-20 (Iowa 2016).

Filing a civil lawsuit meets the required "use of legal process" element. *See Int'l Motor Contest Ass'n, Inc. v. Staley*, 434 F. Supp. 2d 650, 675 (N.D. Iowa 2006) (citing *Fuller v. Local Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 422 (Iowa 1997)). The second element requires "[t]he plaintiff prove that the defendant used the legal process *primarily* for an impermissible or illegal motive." *Id.* (quoting *Gibson*, 621 N.W.2d at 398) (internal quotations omitted) (emphasis in

original)).  "Normally, the improper purpose sought is an attempt to secure from another some collateral advantage not properly includable in the process itself." *Fuller*, 567 N.W.2d at 421.  *See also* Restatement (Second) of Torts § 682, comment b ("For abuse of process to occur there must be use of the process for an immediate purpose other than that for which it was designed and intended.  The usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay a different debt or to take some other action to refrain from it.").

Defendants argue they are entitled to summary judgment on Roskens' abuse of process claims because the undisputed facts demonstrate that Roskens failed to properly have her vacation payout approved by the City Council as demonstrated by a state audit. *See* Doc. No. 17 at 14.  Even though Judge Ahlers found that Roskens was entitled to payment of the unused vacation, defendants argue the result of this earlier legal proceeding is immaterial and inadmissible.  *See* Iowa Model Civil Jury Instruction 1800.3 ("The result of the earlier legal proceeding does not matter.").  Defendants also argue that they are entitled to discretionary act immunity as to Count XXI alleging abuse of process under Iowa law.

Roskens argues the City Council and Mayor approved her vacation payout.  She relies on the district court opinion finding in her favor and argues that issue preclusion may be used offensively to establish the second element of her abuse of process claim. *See* Doc. No. 22-1 at 30-31.  In her complaint, she alleges that defendants pursued the civil lawsuit not for any legitimate purpose, but for one of the following purposes:

    a.      to obtain a windfall to Defendant City by getting the benefit of Cynthia's work without having to compensate her for the vacation time sacrificed in order to perform the work;

    b.      to recover this money as Defendant City did not have sufficient funds available to cover the costs of capital project payments as they came due;

    c.       to use the concurrent legal actions against Cynthia to leverage her to make financial payments she was not legally required to make in both the criminal and civil cases; and/or,

    d.       to harass Cynthia and to harm her personal and professional reputation with further allegations of fraud.

Doc. No. 1 at 38-39. Roskens argues that Judge Ahlers' decision identified the purpose of the lawsuit:

> The City chose to take advantage of the first option[19] and allowed Ms. Roskens to work with the understanding that she would be compensated for the unused vacation time. The City is not permitted to reap the benefit of that decision and then try to avoid the obligations that came with it.

*See* Doc. No. 22-1 at 30; Doc. No. 23-3 at 187-91.

    With regard to discretionary function immunity, defendants argue there is no evidence that anyone other than the City Attorney decided to bring suit or that anyone acting on behalf of the City acted with an improper motive in attempting to recover money due and owing the City. *See* Doc. No. 17 at 21. They contend the decision to bring suit is a discretionary matter and involves considerations of public policy. They argue the City and individual defendants (to the extent they were involved) are entitled to discretionary function immunity on the common law abuse of process claim. *Id.*

    I do not find that discretionary immunity applies to the City's decision to pursue the lawsuit against Roskens. Defendants argue that the decision involves matters of public policy, but they do not explain what they are. They have not cited any case law recognizing that such an action is entitled to discretionary function immunity. I find that such a decision involves legal considerations, but not considerations of public policy

---

[19] Judge Ahlers explained that when the Utility Billing Clerk quit with one month remaining in the fiscal year leaving only Roskens in the Clerk's Office, the City was left with two options: allow Roskens to take her two and a half weeks of vacation time (effectively closing the Clerk's Office) or pay her accrued vacation time. *See* Doc. No. 23-3 at 187-91.

grounded in social, economic or political reasons. Defendants are not entitled to summary judgment on Roskens' common law abuse of process claim based on discretionary function immunity.

With regard to the merits of her abuse of process claim under Iowa law, I find that Roskens has demonstrated a genuine issue of material fact regardless of whether Judge Ahlers' ruling is admissible. Roskens' complaint alleges that the City pursued the civil lawsuit to leverage Roskens to make financial payments in both the criminal and civil case even though she was not legally obligated to do so. The record shows that the warrant for Roskens' arrest was issued on March 6, 2017. Doc. No. 19 at 126. On June 9, 2017, the City sent her a letter noting that a recent state audit disclosed she had been paid in violation of City policy. *See* Doc. No. 23-3 at 201. It filed the civil lawsuit against her on August 27, 2017. The motion to dismiss in Roskens' criminal case was not filed until October 5, 2017. Doc. No. 19 at 139-41. The hearing in the civil lawsuit took place on October 17, 2017, and the ruling was issued the next day. A reasonable jury could conclude that, based on the timing of events, that the City's primary purpose in bringing the civil lawsuit was improper. *See Staley*, 434 F. Supp. 2d at 675 ("[a]n abuse of process can occur even though there is probable cause to bring the action and the original action terminates in favor of the plaintiff, if the primary purpose of the action was nevertheless improper.") (internal quotations omitted)). Defendants' motion for summary judgment is denied as to Count XXI.

With regard to Count X, alleging a § 1983 claim based on abuse of process as a violation of the Fourth[20] and Fourteenth Amendments, Roskens must demonstrate that a fundamental right was violated and that defendants' conduct "shocks the conscience."

---

[20] Roskens makes no argument as to how the small claims action violated her Fourth Amendment right to be free from unreasonable search and seizure. *See* Doc. No. 22-1 at 28-29. As such, I will limit my analysis of Roskens' abuse of process allegations in Count X to a violation of the Fourteenth Amendment.

*Folkerts v. City of Waverly, Iowa*, 707 F.3d 975, 980 (8th Cir. 2013) (citing *Akins v. Epperly*, 588 F.3d 1178, 1182 (8th Cir. 2009)). She notes that state law provides the elements for the offense under § 1983. *See* Doc. No. 22-1 at 28-29. Roskens has not pointed to any facts from which a jury could conclude that the civil lawsuit filed against her "shocks the conscience." Defendants are entitled to summary judgment on Count X. *See Buckley v. Ray*, 848 F.3d 855 (8th Cir. 2017) ("The 'shocks-the-conscience' test presents a high bar . . . [because it] "must involve conduct 'so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism . . . that it amounted to a brutal and inhumane abuse of official power literally shocking the conscience.").

### 5.    *Defamation Claim – (Count XXIV)*

Roskens alleges defamation per se, or alternatively, defamation in Count XXIV. Both require her to prove that the respective defendant made the statement, the defendant communicated the statement to someone other than Roskens, the statement would reasonably be understood to be an expression that would attack a person's integrity or moral character or expose Roskens to public hatred, contempt or ridicule. *See Graves v. Iowa Lakes Community College*, 639 N.W.2d 22 (Iowa 2002). Defendants argue that Roskens' defamation claims fail as a matter of law because she does not know whether any individual defendant communicated a defamatory statement to anyone. Doc. No. 17 at 16 (citing Doc. No. 13-2 at 38). Nor was she able to identify any per se defamatory remark made by any defendant. Defendants also argue that Roskens has not identified any damages as a result of any alleged defamation. *Id.* Finally, they argue that assertions in pleadings of matters reasonably pertinent to the issues presented by a lawsuit is absolutely privileged. *Id.* at 17 (citing *Robinson v. Home Fire & Marine Ins. Co.*, 49

N.W.2d 521, 525 (Iowa 1951)).[21]

Roskens did not address defendants' arguments on this issue in her resistance. However, she does dispute all but two of the facts related to this claim. *See* Doc. Nos. 13-1 at 8-9; 23-1 at 8-9. She admits that she contends the act of filing the civil lawsuit against her was defamatory[22] and that she did not suffer any monetary damage as a result of the alleged defamation. *Id.* Since it is unclear whether Roskens resists summary judgment on her defamation claim,[23] I will proceed to consider whether defendants have shown that they are entitled to judgment as a matter of law on that claim.

Defamation requires proof of the following elements: "(1) publication, (2) of a defamatory statement, (3) which was false and (4) malicious, (5) made of and concerning the plaintiff, (6) which caused injury." *Bierman v. Weier*, 826 N.W.2d 436, 443 (Iowa 2013). Certain statements are defamatory per se, "which means they are actionable in and of themselves without proof of malice, falsity or damage." *Vinson v. Linn-Mar Cmty. Sch. Dist.*, 360 N.W.2d 103, 115 (Iowa 1984).

---

[21] *Robinson* relied in part on section 586 of the Restatement of Torts, noting that an attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as part of a judicial proceeding in which he participates as counsel if the statement relates to those proceedings. *Robinson*, 49 N.W.2d at 525. The Court held the privilege extends to the client. *Id.* at 1130. *See also* Restatement (Second) of Torts § 587 ("A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding . . . if the matter has some relation to the proceeding.").

[22] This is not alleged in Roskens' complaint. *See* Doc. No. 1 at 65 ("Defendants have each made false and defamatory statements against Cynthia, namely accusing her of committing fraud or engaged in fraudulent acts.").

[23] This court's Local Rules provide that "[i]f a party does not intend to resist a motion for summary judgment, the party is encouraged to file a statement indicating the motion will not be resisted." *See* Local Rule 56(c).

Roskens' defamation claim appears to be based on either the filing of the civil lawsuit itself[24] or on statements defendants made concerning the allegations in the lawsuit. She alleges the defendants made statements "accusing her of committing fraud or engaged in fraudulent acts" and that defendants "made and published these statements to third parties." Doc. No. 1 at 65. Roskens does not identify precisely who made the statements, what the statements were, or when or how they were published. The most she does is cite to her deposition in which she stated "[t]here was some reference to my shoddy bookkeeping" in the Ackley newspaper. *See* Doc. No. 23-3 at 12-13. She indicated that Graham was the person who made this reference. While the deposition transcript suggests there is an exhibit of this statement, it was not submitted in any of Roskens' appendices. *See* Fed. R. Civ. P. 56(e) (the party opposing summary judgment is required to go beyond the pleadings, and by affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."); *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 909 (8th Cir. 1999) ("general statements in affidavits and deposition testimony . . . are insufficient to withstand a properly-supported motion for summary judgment." (quoting *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 616 (8th Cir. 1997)). Without evidence of the statement itself, when it was made or by whom, I find that Roskens' defamation claim fails as a matter of law. *See Freeman v. Bechtel Constr. Co.*, 87 F.3d 1029, 1032 (8th Cir. 1996) (upholding the dismissal of plaintiff's claims where plaintiff did not "identify the defamatory statements with any specificity," did "not identify the manner of oral publication" and did "not alleged that [agent of defendant] published the statements to a nonprivileged recipient."). Because Roskens has not come forward with sufficient evidence to support her defamation claim, I find that defendants are entitled to

---

[24] This is generally insufficient to support a claim of defamation. *See Phelps v. Powers*, 5 F. Supp. 3d 1036, 1046 (S.D. Iowa 2013) (noting the court was not aware of any case where merely announcing the filing of a lawsuit supports a claim for defamation).

summary judgment on Count XXIV.

### 6.    *Monell Claims – (Counts VII, VIII, IX and XI)*

Under *Monell*, "a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). "Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an 'official municipal policy,' (2) an unofficial 'custom,' or (3) a deliberately indifferent failure to train or supervise." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013) (internal citations omitted). Roskens alleges four *Monell* claims – the first based on warrantless search and invasion of privacy (Count VII), the second based on malicious prosecution (Count VIII), the third based on unreasonable seizure (Count IX) and the fourth based on abuse of process (Count XI). *See* Doc. No. 1. Defendants seek summary judgment only as to the first three. *See* Doc. No. 17 at 24. They argue these claims fail because Roskens does not have any evidence regarding policies that were adopted or not adopted by the City and for the reasons stated as to the underlying claims (warrantless search, invasion of privacy, malicious prosecution, unreasonable seizure).

Roskens argues that for Counts VII, VIII and IX, a municipality may be liable under § 1983 for a single decision by its legislative body regardless of whether it has done so in the past or intends to do so in the future. Doc. No. 22-1 at 34 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)). Roskens alleges that Graham had supervisory authority over all city departments and the power to examine the function of all departments. *Id.* at 35. She contends that Shimon had almost no training as to proper search and seizure laws in almost 30 years and that this is intimately tied to the City's custom to take a lackadaisical approach to city governance. *Id.* She also notes the City did not have a written policy in place regarding how city employees should handle mail that was incorrectly delivered to the City Clerk's office. *Id.*

A plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating:

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the government entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom as a moving force behind the constitutional violation.

*Corwin v. City of Indep., Mo.*, 829 F.3d 695, 700 (8th Cir. 2016) (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)). "Thus, in order to avoid summary judgment, the plaintiff must establish that 'a reasonable jury could find that action pursuant to an official municipal policy of some nature caused a constitutional tort.'" *Peters v. Woodbury Cnty., Iowa*, 979 F. Supp. 2d 901, 973 (N.D. Iowa 2013) (citing *Atkinson*, 709 F.3d at 1214). When a plaintiff alleges *Monell* liability as the result of an unwritten or unofficial policy, there must be "evidence of . . . a practice, so permanent and well-settled so as to constitute a custom, that existed." *Davison v. City of Minneapolis*, 490 F.3d 648, 659 (8th Cir. 2007) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). "Generally, an isolated incident of alleged police misconduct . . . cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013). There can be no "*Monell* liability" if there was no underlying constitutional violation. *Peters*, 979 F. Supp. 2d at 973.

I have found there is no underlying constitutional violation for any of Roskens' *Monell* liability claims. As such, these claims fail as a matter of law. Defendants are entitled to summary judgment on Counts VII, VIII, IX and XI.

### 7. *Negligent Training and Supervision of DeBerg and Shimon – (Counts XXII and XXIII)*

Defendants argue they are immune from these claims based on discretionary function immunity. Doc. No. 17 at 21. They cite *Gordon ex rel. Gordon v. Ottumwa Cmty. Sch. Dist.*, 115 F. Supp. 2d 1077, 1085-87 (S.D. Iowa 2000) in which the court cited several cases holding that "the hiring, retention, training and supervision of public employees involves discretionary, policy-related decisions for which a public entity is immune from liability under applicable state law." *Gordon ex rel. Gordon*, 115 F. Supp. 2d at 1087). They argue that even if discretionary function immunity does not apply, Roskens fails to describe how defendants were negligent in the training and supervision of DeBerg and Shimon. They contend both DeBerg and Shimon were qualified for the jobs for which they were hired and that Roskens has no evidence as to how their supervision and training were negligent.

Roskens argues that the Iowa Supreme Court has determined that discretionary function immunity does *not* apply to the hiring, retention and supervision of individual employees. Doc. No. 22-1 at 38 (citing *Doe v. Cedar Rapids Cmty. Sch. Dist.*, 652 N.W.2d 439, 445 (Iowa 2002) (holding "[t]he choice to hire, retain, and supervise a particular teacher does not involve policy decisions entitled to judicial review.")). The Court in *Doe* reasoned:

> It is possible, with minimal effort, to articulate some notion of policy considerations involved in any decision. Although a school administration may very well make policy decisions concerning teachers and their conduct, a decision concerning an individual teacher with these policies as a backdrop does not catapult those decisions into the zone of immunity of the discretionary function. Decisions about individual teacher that may have policy implications do not elevate such decisions to the level of economic, political, or social policy-making. Only decisions grounded in economic, political, or social policy considerations are exempt from liability. The choices inherent in hiring, retaining, and supervising a particular teacher are not policy choices our legislature intended to immunize. They do not affect the 'big picture' but rather have impact on a very small scale. These decisions must be made by every school district when a teaching position is

> vacant and must be filled. Such decisions are no different than a
> government employee's decision to turn left or right at a stop sign. Actions
> of this nature are not immune from liability because they are not real policy
> decisions implicating governmental functions.

*Doe*, 652 N.W.2d at 445 (internal citation omitted). The *Doe* Court rejected *Gordon*, noting that it failed to articulate any specific policy considerations involved in such decisions. *Id.* at 444-45.

I agree with Roskens that defendants are not entitled to summary judgment on these claims based on discretionary function immunity. As the Iowa Supreme Court has said: "the primary factor in determining whether a particular activity qualifies as a discretionary function is whether the decision to act involves the evaluation of broad policy factors. If so, the decision is more likely to be characterized as a discretionary function." *Keystone Elec. Mfg., Co. v. City of Des Moines*, 586 N.W.2d 340, 348 (Iowa 1998). For the reasons stated in *Doe*, the decisions regarding the training and supervision of DeBerg and Shimon do not qualify for discretionary function immunity.

As for the merits of these claims, tort of negligent hiring, retention or supervision of an employee requires proof of the following under Iowa law:

    (1)    that the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring;

    (2)    that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and

    (3)    that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Godar v. Edwards*, 588 N.W.2d 701, 708-09 (Iowa 1999) (quoting 27 Am.Jur.2d *Employment Relationship* § 473 at 913-14 (1996)). A claim of negligent supervision "must include as an element an underlying tort or wrongful act committed by the employee." *Schoff v. Combined Ins. Co. of Am.*, 604 N.W.2d 43, 53 (Iowa 1999).

Roskens' evidence of negligent training and supervision is that Shimon has had almost no training in search and seizure laws in almost 30 years, which she alleges is "intimately tied to the overwhelming custom of the Ackley City Government, namely 'go along to get along' with the assumption being that [what] was happening was the way it was supposed to be done." Doc. No. 22-1 at 35. As for DeBerg, she argues that there was no written policy governing what to do with mail that was incorrectly delivered to the City Clerk's office. *Id.*

Roskens' negligent training and supervision claims are based on the opening of the U.S. Cellular bill. I found no underlying tort or wrongful act with regard to that action because she did not have a privacy interest in the letter based on the fact that she was not the addressor or addressee. As such, defendants are entitled to summary judgment on Counts XXII and XXIII.

### 8.     *Respondeat Superior Liability – (Counts XXV and XXVI)*

Defendant City of Ackley seeks summary judgment on Roskens' respondeat superior liability claims based on discretionary function immunity. *See* Doc. No. 17 at 23. The only argument it makes as to these claims is: "For all of the foregoing reasons, the City is entitled to discretionary function immunity for respondeat superior liability for the acts of Clerk DeBerg (Count XXV) and Police Chief Shimon (Count X[X]VI)." *Id.* It also seeks summary judgment on these claims based on the lack of underlying torts.

Roskens argues that her respondeat superior claims must survive summary judgment if I deny summary judgment as to any of the underlying claims. *See* Doc. No. 22-1 at 40. She contends that both Shimon and DeBerg were acting within the scope of their employment when they acted against Roskens and the City should therefore be liable. *Id.*

I have found that defendants are not entitled to discretionary function immunity. They make no other argument as to why they are entitled to summary judgment on these claims. *See* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact *and* the movant is entitled to judgment as a matter of law."). Defendants' motion for summary judgment is denied as to Counts XXV and XXVI.

In summary with regard to defendants' motion, I find they are entitled to summary judgment on all but the following claims:

- Count II (§ 1983 claim under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution for invasion of privacy against DeBerg)

- Count IV (§ 1983 claim under the Fourth, Fifth, Ninth and Fourteenth Amendments of the United States Constitution for invasion of privacy against Shimon)

- Count XIII (violation of Article 1, section 9 of the Iowa Constitution for invasion of privacy against DeBerg)

- Count XV (violation of Article 1, section 9 of the Iowa Constitution for invasion of privacy against Shimon)

- Count XVII (common law invasion of privacy against DeBerg)

- Count XVIII (common law invasion of privacy against Shimon)

- Count XXI (common law abuse of process against Graham, Harms, Ibeling, Jones, Wessels, Brass, DeBerg and City of Ackley)

- Count XXV (respondeat superior liability regarding DeBerg against City of Ackley)

- Count XXVI (respondeat superior liability regarding Shimon against City of Ackley)

## D.    *Roskens' Motion*

The only remaining claims on which Roskens also seeks summary judgment are the common law claims of invasion of privacy – Counts XVII and XVIII.  As discussed above, Roskens' complaint alleges two different types of invasion of privacy – (1) the initial opening/search of the letter and (2) the disclosure of its contents to others.[25]  *See* Doc. No. 1 at 53-56.  She relies solely on the intrusion upon the solitude or seclusion of another theory in arguing she is entitled to summary judgment, noting that the two elements are "an intentional intrusion into a matter the plaintiff has a right to expect privacy" and an act "highly offensive to a reasonable person."  *Koeppel*, 808 N.W.2d at 181.  She also relies on *Roth v. Farner-Bocken Co.*, 667 N.W.2d 651, (S.D. 2003).  In that case, a package was inadvertently delivered to a person's former employer due to a clerical error.  *Id.* at 658.  An employee opened the package in the regular course of business and, upon opening it, realized it had been improperly delivered.  *Id.* Nonetheless, the employee copied the documents in the package and forwarded them to company executives.  *Id.*  The South Dakota Supreme Court found these facts were sufficient to support a finding of a common law invasion of privacy claim.  *Id.*  Roskens argues this case presents similar facts.

Because Roskens seeks summary judgment based only on the initial opening/search of the letter and I have found that, as a matter of law, she did not have a privacy interest based on the exterior of the letter (allowing DeBerg and Shimon to open the letter and search its contents), I find that she is not entitled to summary judgment on her common law invasion of privacy claims under this theory.  The remaining theory or theories on these claims are reserved for trial.

---

[25] Roskens also alleges that seeking additional information about her account from her cell phone provider also intruded on her privacy.  However, I find that this falls within the first category.

## IV.     CONCLUSION

For the reasons set forth herein:

1.      Defendants' motion (Doc. No. 13) for summary judgment is **granted in part** and **denied in part**.  The motion is **granted** as to all claims <u>except</u> the following: Counts II, IV, XIII, XV, XVII, XVIII, XXI, XXV and XXVI.  The motion is **denied** as to those counts.

2.      Roskens' motion (Doc. No. 15) for partial summary judgment is **denied as moot** as to all claims <u>except</u> Counts XVII and XVIII (common law invasion of privacy). With regard to those two counts, her motion is **denied**.

3.      This case shall proceed to trial on Counts II, IV, XIII, XV, XVII, XVIII, XXI, XXV and XXVI.[26]

**IT IS SO ORDERED.**

**DATED** this 24th day of January, 2020.

_____
Leonard T. Strand, Chief Judge

---

[26] The invasion of privacy claims (Counts II, IV, XIII, XV, XVII and XVIII) shall not be based on the initial opening/search of the letter, but only on whether the disclosure of the contents of the billing statement to anyone constituted an invasion of privacy.